506 A.2d 879

**Jean Marie MINNICH, Appellant,**

v.

**Gregory L. RIVERA, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 1985.

Decided March 21, 1986.

Mary Louise Barton, Asst. Dist. Atty., for appellant.
William W. Campbell, Lancaster, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-
MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented in this appeal is whether the eviden-
tiary standard in a paternity trial, proof by a preponderance
of the evidence, as prescribed by statute, 42 Pa.C.S.A.
§ 6704(d), violates the due process clause of the 14th
Amendment of the United States Constitution.

The Act of April 28, 1978, P.L. 202, No. 53, as amended
by the Act of October 5, 1980, P.L. 693, No. 42, as further
amended by the Act of December 20, 1982, P.L. 1409, No.
326, 42 Pa.C.S.A. § 6704 abolished criminal paternity pro-
ceedings and the evidentiary burden of proof beyond a
reasonable doubt.[1] Instead the legislature mandated that

---

**1.** Previously, the procedure to establish paternity was by a criminal
bastardy prosecution. In such a proceeding the Commonwealth pros-

the trial of paternity shall be a civil action with the lessened standard of proof generally applicable to civil trials—proof by a preponderance of the evidence. Section 6704(d) provides:

> *Trial of Paternity*—Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the court without a jury unless either party demands trial by jury. The trial, whether or not a trial by jury is demanded, shall be a civil trial and there shall be no right to a criminal trial on the issue of paternity. *The burden of proof shall be by a preponderance of the evidence.* (Emphasis supplied).

42 Pa.C.S.A. § 6704(d).

On May 28, 1983, the appellant, Jean Marie Minnich, gave birth to a baby boy, Cory Michael Minnich. Approximately three weeks later, on June 17, 1983, appellant filed a complaint in the domestic relations division of the Common Pleas Court of Lancaster County seeking support for her son from the appellee, Gregory L. Rivera, alleged to be the father of the newly born infant. Appellee denied paternity and a trial on that issue was held before a jury on April 24, 1984. The jury returned a verdict in favor of appellant and against appellee finding that the appellee, Gregory L. Rivera, was the father of Cory Michael Minnich.

Prior to the start of the trial, the appellee moved the court that the burden of proof as set forth in 42 Pa.C.S.A. § 6704(d)—proof by a preponderance of the evidence—offends the due process clause of the 14th Amendment to the United States Constitution.[2] Appellee argued that due pro-

ecuted the alleged father upon the complaint of the mother. The Commonwealth's burden was to prove beyond a reasonable doubt an act of intercourse between the prosecutrix-mother and the putative father, and the conception of a child as a result of that act. *See Commonwealth v. Rankin,* 226 Pa.Super. 37, 311 A.2d 660 (1973).

**2.** The lower court noted that although the appellee, in his brief, raised a due process issue under the Pennsylvania Constitution, in his argument he appeared to rely exclusively on the Federal Constitution.

cess requires that the burden of proof in paternity cases be proof by clear and convincing evidence. He requested that the jury be so charged. The trial judge denied appellee's motion and refused to charge on the heightened burden of proof. The court instructed the jury in accordance with 42 Pa.C.S.A. § 6704(d) that the burden of proof in establishing paternity is proof by a preponderance of the evidence.

Following the verdict against him, the appellee filed post-trial motions arguing that the trial court had erred in refusing to impose the clear and convincing evidence standard to the issue of paternity and in charging the jury on the preponderance standard. The lower court reversed itself holding that due process requires that the burden of proof in a paternity case be by clear and convincing evidence. The court held that 42 Pa.C.S.A. § 6704(d) requiring only proof by a preponderance of the evidence is unconstitutional and ordered a new trial. From the lower court's holding and order, this appeal followed.[3]

At the outset, we begin our consideration of the issue here with the strong presumption that enactments of the legislature are constitutional and he who challenges the constitutionality of an act of assembly carries a heavy

Hence, the lower court's decision focused on the 14th Amendment. Similarly, in this Court, the appellee's brief raises a claim under Article I, Section 1 of the Pennsylvania Constitution but the arguments of both parties concentrate on the Federal Constitution. Accordingly, we have focused our analysis on 14th Amendment requirements. Nevertheless, what we say here is equally applicable to due process concerns of the Pennsylvania Constitution.

3. This is a direct appeal to this court under 42 Pa.C.S.A. § 722(7) which provides:

The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

(7) Matters where the court of common pleas had held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Consitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.

burden of proof. *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983). *Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981). *National Wood Preserves v. Commonwealth*, 489 Pa. 221, 414 A.2d 37 (1980).

"It is an elementary principle of statutory construction, which this Court has affirmed on numerous occasions, that 'an Act may not be declared unconstitutional unless it violates the constitution clearly, palpably, plainly.and in such manner as to leave no doubt or hesitation in our minds.' " (citation omitted)

*Absentee Ballots Case No. 1*, 431 Pa. 165, 169, 245 A.2d 258, 260 (1968).

The statute in question here—42 Pa.C.S.A. § 6704(d)—mandates that paternity trials be civil proceedings as opposed to criminal, and the burden of proof be the standard usually applied to civil trials—proof by a preponderance of the evidence. It is within the province of the legislature to prescribe a standard of proof applicable to particular actions and proceedings so long as the standard announced meets minimum due process requirements. *See: Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985). The appellant argues that the lower court erred in declaring that the preponderance standard set by the legislature failed to meet minimum due process requirements and was, therefore, unconstitutional. We agree with appellant that the lower court did err and now reverse.

The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). The standard serves to allocate the risk of

error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (concurring opinion by Larsen, J. in which the majority joins), citing *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979).

In weighing the standard of proof that should apply in paternity trials, it is incumbent upon us to: (1) appraise the interest of the individual alleged to be the father along with the interests of the child and the mother; (2) assess the Commonwealth's interest in family matters and in establishing paternity under a particular standard of proof; and (3) consider the risk that those interests may be erroneously deprived because of the standard applied. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Also see Stantosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

The person alleged to be father has a legitimate interest in not being declared the father of a child he had no hand in bringing into the world. It is important to him that he not be required to provide support and direct financial assistance to one not his child. There is a legitimate concern on his part with not having a stranger declared his legal heir thereby giving that stranger potential interests, inter alia, in his estate,[4] and Social Security Benefits.[5] He has an interest in not being responsible for the health, welfare and education of a child not his own.

The child born out of wedlock, on the other hand, has an interest in knowing his father and in having two parents to provide and care for him. The child's concerns include a known belonging to a certain line of descent with knowl-

4. See Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 2101, et seq.

5. See 42 U.S.C. § 402.

edge of any benefits or detriments inheritable from that line. Further, the child is entitled to financial assistance from each parent able to provide such support.

The mother has an interest in receiving from the child's natural father help, financial and otherwise, in raising and caring for the child born out of wedlock. She has an interest in seeing that her child has two responsible parents.

The Commonwealth has an interest in its infant citizens having two parents to provide and care for them. There is a legitimate interest in not furnishing financial assistance for children who have a father capable of support. The Commonwealth is concerned in having a father responsible for a child born out of wedlock. This not only tends to reduce the welfare burden by keeping minor children, who have a financially able parent, off the rolls, but it also provides an identifiable father from whom potential recovery may be had of welfare payments which are paid to support the child born out of wedlock.

Considering the respective interests of the parties, the burden of proof by a preponderance of the evidence which requires the litigants to share the risk of error in "roughly equal fashion," *Addington v. Texas, supra* 441 U.S. at 423, 99 S.Ct. at 1808, satisfies the minimum requirements of due process. In the typical case, the alleged father has had sexual relations with the mother and it is the mother's contention that those relations resulted in conception and the birth of a child. The putative father denies paternity and demands a trial to determine that issue. The trial must be procedurally fair, and to that end the Commonwealth must provide indigent putative fathers with blood tests without charge, *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), and alleged fathers who are indigent have a right to appointed counsel in paternity actions, *Corra v. Coll*, 305 Pa.Super 179, 451 A.2d 480

(1982). These procedural safeguards work to keep the risk of error between the litigants on a close to even footing.

Generally, those cases where clear and convincing evidence is the standard of proof, the moving party is seeking: (A) to diminish or terminate another's rights: *In Re T.R., a minor, Appeal of P.A.R.*, 502 Pa. 165, 465 A.2d 642 (1983); *Santosky v. Kramer, supra* (involuntary termination of parental rights); *Stevenson v. Stein*, 412 Pa. 478, 195 A.2d 268 (1963) (title by adverse posession); *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation); *Chaunt v. United States*, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (denaturalization); *Addington v. Texas, supra* (involuntary civil commitment proceedings); *See also Hale v. Sterling*, 369 Pa. 336, 85 A.2d 849 (1952) (action to establish a resulting trust in real estate) and *Elliott v. Clawson*, 416 Pa. 34, 204 A.2d 272 (1984) (action to set aside a transaction on the basis of mental incompetency); (B) to prove fraud; *Murdoch v. Murdoch*, 418 Pa. 219, 210 A.2d 490 (1965) (attempt to set aside a settlement based on fraud); (C) to rebut the strong presumption of legitimacy; *Connell v. Connell*, 329 Pa.Super 1, 477 A.2d 872 (1984) (attempt by husband to overcome presumption of legitimacy of a child born during marriage and while he was living with his wife; and (D) to attempt to establish rights against a decedent's estate based upon an act or acts of the decedent during his lifetime; *see Estate of Pitone*, 489 Pa. 60, 413 A.2d 1012 (1980) (attempt to establish an inter vivos gift by decedent against decedent's estate). *See also Estate of Reichel*, 484 Pa. 610, 400 A.2d 1268 (1979), *Beniger Estate*, 449 Pa. 373, 296 A.2d 773 (1972), and *Mooney's Estate*, 328 Pa. 273, 194 A. 893 (1937).

A paternity trial does not resemble any of the above actions which require a heightened standard of proof. In a paternity suit the plaintiff or complainant does not seek to terminate another's rights. The mother is not asking the court to strip the putative father of previously held rights.

There are no allegations of fraud at issue nor is there an attempt to gain rights against a decedent's estate. Further, the complainant is not faced with the considerable burden of overcoming a strong presumption. In a paternity action, the plaintiff's primary aim is to establish and enforce the rights of the child born out of wedlock. The rights of the child are central to the suit and considerations of fairness and risk of error allocation are quite different than those traditionally requiring the clear and convincing evidence standard.

In those jurisdictions where paternity proceedings are regarded civil in nature, as they are in Pennsylvania, the general rule is that the burden of proof of paternity is by a preponderance of the evidence. *See* 10 Am Jur 2nd 922 and 10 C.J.S., Bastards § 95. A majority of the courts which have considered the quantum of evidence issue in the "civil trial" jurisdictions, have affirmed the preponderance standard. *See McFadden v. Griffith*, 278 Ark. 460, 647 S.W.2d 432 (1983); *Walsh v. Palma*, 154 Cal.App.3d 290, 201 Cal. Rptr. 142 (1984); *Terrasi v. Andrews*, 3 Conn.Cir.Ct. 449, 217 A.2d 75 (1965); *People Ex Rel. Cizek v. Azzarello*, 81 Ill.App.3d 1102, 37 Ill.Dec. 84, 401 N.E.2d 1177; *Spears v. Veasley*, 239 Iowa 1185, 34 N.W.2d 185 (1948); *Dorsey v. English*, 283 Md. 522, 390 A.2d 1133 (1978); *Snay v. Snarr*, 195 Neb. 375, 238 N.W.2d 234; *State (F) v. M*, 96 N.J.Super. 335, 233 A.2d 65 (1967); *Leach v. State*, 398 P.2d 848 (Okl.1965); *In Re F.J.F.*, 312 N.W.2d 718 (S.D.1981); and *Frazier v. McFerren*, 55 Tenn.App. 431, 402 S.W.2d 467 (1964). The standard of proof called for by 42 Pa.C.S.A. § 6704(d) is in accord with the general rule.

The respective interests of the putative father, the child and the mother are clear. Also clear is the interest of the Commonwealth in seeing that fathers support their children who are born out of wedlock so that those children do not

become public charges. The standard of proof must be one that recognizes these interests and does not unduly risk the erroneous deprivation of any of them. On balance, the preponderance standard meets these demands and satisfies the requirements of due process. The order of the Common Pleas Court of Lancaster County is reversed and this case is remanded for proceedings consistent with this opinion.

NIX, C.J., filed a dissenting opinion.

NIX, Chief Justice, dissenting.

Notwithstanding the heavy burden of proof demanded to sustain a constitutional challenge to an act of the General Assembly, it is my considered opinion that the trial court was correct in concluding that due process requires that paternity be established by clear and convincing evidence. The preponderance standard specified by section 6704(g) of the Judicial Code, 42 Pa.C.S. § 6704(g), is therefore unconstitutional.

The function of a standard of proof is " 'to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' " *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979), *quoting In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). The United States Supreme Court has identified three factors which must be balanced in determining the standard of proof required by due process in a particular type of proceeding:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (citation omitted).

The private interests of the putative father in a paternity action are of considerable importance. These interests were cogently described by the United States Supreme Court in *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981):

The private interests implicated here are substantial. Apart from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship. This Court frequently has stressed the importance of familial bonds, whether or not legitimized by marriage, and accorded them constitutional protection. *See Stanley v. Illinois*, 405 US 645, 651–652, 31 L.Ed.2d 551, 92 S.Ct. 1208 [1212–1213] (1972). Just as the termination of such bonds demands procedural fairness, *see Lassiter v. Department of Social Services*, post, [452 U.S.] p. 18, 68 L.Ed.2d 640, 101 S.Ct. 2153 (1981), so too does their imposition. Through the judicial process, the State properly endeavors to identify the father of a child born out of wedlock and to make him responsible for the child's maintenance. Obviously, both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination.

*Id.* at 13, 101 S.Ct. at 2209 (footnote omitted).

The second factor, the risk of an erroneous decision, also militates in favor of a heightened standard of proof. The testimony offered by the parties in a paternity suit is often

of questionable reliability and the availability of eyewitnesses is unlikely. *See, e.g., Little v. Streater, supra* at 14, 101 S.Ct. at 2209.

The final factor to be considered is the government's interest in the standard of proof to be selected. The state shares the interest of the child and the putative father in a just and accurate determination. *See Little v. Streater, supra* at 14, 101 S.Ct. at 2209; *Lassiter v. Department of Social Services,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). Moreover, the imposition of a more stringent standard of proof entails no additional time or expense to the government.

From the foregoing it is clear that the use of the preponderance standard in paternity proceedings does not satisfy the requirements of due process. The preponderance standard is the least demanding standard known to the law. *Commonwealth v. Ehredt,* 485 Pa. 191, 401 A.2d 358 (1979); *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977); *Se-Ling Hosiery, Inc. v. Margulies,* 364 Pa. 45, 70 A.2d 854 (1950). To satisfy that standard the party bearing the burden need only present evidence which outweighs the opposing evidence in probative value. *Se-Ling Hosiery, Inc. v. Margulies, supra.* In contrast a "clear and convincing evidence" standard requires that

> [T]he witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.... It is not necessary that the evidence be uncontradicted ..., provided it "carries a clear conviction to the mind" ... or carries "a clear conviction of its truth....."

*In re Estate of Fickert,* 461 Pa. 653, 658, 337 A.2d 592, 594 (1975) *quoting La Rocca Trust,* 411 Pa. 633, 640, 192 A.2d 409, 413 (1963).

*See also Thomas v. Seaman,* 451 Pa. 347, 304 A.2d 134 (1973); *Broida v. Travelers Insurance Co.,* 316 Pa. 444, 175 A. 492 (1934).

The "clear and convincing evidence" standard is required in Pennsylvania to prove a number of types of claims in civil actions. *See, e.g., Butler v. Butler,* 464 Pa. 522, 347 A.2d 477 (1975) (facts necessary to overcome presumption of gift); *Elliott v. Clawson,* 416 Pa. 34, 204 A.2d 272 (1964) (incompetency sufficient to rescind transaction); *Stevenson v. Stein,* 412 Pa. 478, 195 A.2d 268 (1963) (title by adverse possession); *Hale v. Sterling,* 369 Pa. 336, 85 A.2d 849 (1952) (resulting trust); *Gilberti v. Coraopolis Trust Co.,* 342 Pa. 161, 19 A.2d 408 (1941) (fraud); *Mooney's Estate,* 328 Pa. 273, 194 A. 893 (1937) (wages owed by decedent for personal service); *Boyertown National Bank v. Hartman,* 147 Pa. 558, 23 A. 842 (1892) (reformation of contract on grounds of mistake); *McKenna v. McKenna,* 282 Pa. super. 45, 422 A.2d 668 (1980) (change of domicile).

Paternity is at least as if not more fundamental than the above-enumerated subjects. Most compelling is the United States Supreme Court's recent ruling in *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), which held that clear and convincing evidence must be presented in order to terminate the parental relationship. It would appear that that issue and the issue with which we are here faced are on equal footing. The individual rights affected by the creation of a parental relationship are as significant as the rights affected by the extinguishment of that relationship. I would hold that the same quality of evidence should be required to create that relationship as to destroy it. I therefore dissent.